GEORGE E. BAGWELL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bagwell v. Commissioner
Docket No. 25528-82.
United States Tax Court
T.C. Memo 1984-93; 1984 Tax Ct. Memo LEXIS 577; 47 T.C.M. (CCH) 1169; T.C.M. (RIA) 84093; February 28, 1984. Jean S. Schanen, for the petitioner. Henry T. Schafer, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: This case is before the Court on cross-motions *578 to dismiss for lack of jurisdiction. Respondent moves that the case be dismissed on the ground that the petition was not timely filed. Petitioner asks that the case be dismissed on the ground that the notices of deficiency were invalid. The case involves 4 years, 1976, 1977, 1978, and 1979. Two notices of deficiency, one for 1976 and 1977 and the other for 1978 and 1979, were mailed to petitioner at 2606 C Street, Anchorage, Alaska (C Street address), on June 4, 1982. In early August 1980, petitioner had moved his dental practice to 4045 Lake Otis Parkway in Anchorage (Parkway address). The notices were returned to the Internal Revenue Service (IRS), undelivered, on or about June 15, 1982. Because the 3-year statute of limitations prescribed by section 6501(a) [1] expired on June 11, 1982, as to the years 1976, 1977, and 1978, the notices were not remailed. The petition was filed on October 25, 1982, more than 90 days after the notices of deficiency were mailed. It is clear, therefore, that the petition must be dismissed. The issue is the ground on which the dismissal should be based. *579 FINDINGS OF FACT Petitioner and his former wife filed joint Federal income tax returns for 1976 and 1977; the 1976 return showed an address in Denver, Colorado, and the 1977 return showed the C Street address. Petitioner's Federal income tax returns for 1978 and 1979 also showed the C Street address. The date of the signature on the 1979 return is "12/15/80," and it bears a stamp showing that it was received by the IRS on "Dec. 19, 1980," a date some 4 months after petitioner moved his business to the Parkway address. The envelope in which the 1979 return was mailed to the IRS showed the Parkway address as the return address. Petitioner, a dentist, maintained his office at the C Strest address from the middle of 1976 to the first part of August 1980, when he moved his office to the Parkway address. This move occurred before petitioner signed his 1979 return even though, as stated above, that return showed the C Street address. When petitioner moved his office, he terminated his lease and thereafter had no connection with the office at the C Street address. He filed with the Post Office in Anchorage a notice of his change of address so that his mail would be forwarded to *580 the new Parkway address; the notice was effective for one year. He also arranged to be appropriately listed in the Anchorage telephone directory at the Parkway address and was so listed in 1982. Petitioner did not notify the IRS of the change of his address. Prior to the issuance of the notices of deficiency, IRS agents corresponded with petitioner at the C Street address during the period between March 12, 1979 and March 7, 1980. The correspondence shows that petitioner declined to cooperate in the audit of his tax returns. In a letter dated September 17, 1979, he stated that the IRS agents had asked for unnecessary information, and he suggested that they send him "a copy of my 1978 return with those items circled in red for which you desire substantiation." The IRS agent responded that "the audit of your 1978 individual tax return * * * is a field audit and not an office audit" and that the IRS wished to inspect "your full set of books." In a letter dated March 7, 1980, petitioner cited "The Privacy Act of 1974, Freedom of Information Act of 1966 and numerous court decisions" and submitted 30 questions which, he said, the IRS was required to answer before obtaining any information *581 from him. Finally, by letter dated June 19, 1981, the IRS advised petitioner that, unless he agreed to an appointment, the IRS would seek "information through third parties." No such appointment was had prior to the issuance of the notices of deficiency. The Anchorage District Office of the IRS is a small one and has neither a review staff nor a district counsel. All of its files are forwarded to the Seattle office for review. After the revenue agent had prepared his report on petitioner's case, he closed it in his office. Petitoner's file, including the agent's report and recommendations, were transmitted to the Seattle office for review in February 1982. The IRS agent's "Examination Workpapers" state that "TP refuses to meet examiner" and explains: "26 months ago TP was informed of the audit of his 7812 [1978] return. He has refused to cooperate with the audit." The papers then set forth the adjustments made to the return. The Seattle office of the IRS reviewed the case, wrote the notices of deficiency, and had them approved by the district counsel. The notices were then returned to Anchorage, signed on behalf of the Commissioner by the Anchorage District Director, and *582 mailed to the C Street address on June 4, 1982. Shortly before the notices of deficiency were issued, on April 19, 1982, petitioner filed his 1980 income tax return with the Ogden Service Center, Ogden, Utah. Income tax returns filed with the service center are manually processed in batches of 100. Among other data, a taxpayer's address is recorded by keypunch and transmitted to the IRS National Computer Center, Martinsburg, West Virginia, where a master file of consolidated information from all service centers is developed. The consolidated information with respect to individual taxpayers is then drained off the Martinsburg computer and fed back to the service center which has responsibility for a particular taxpayer's liability. This process of transmittal to Martinsburg and the return of the information to the service center takes approximately 2 weeks. The data returned to the service center, including the taxpayer's address, is then put on microfilm and the microfilm is mailed by cartridge to the district office serving the district in which the taxpayer lives. Petitioner's 1980 income tax return on its face shows the Parkway address. Attached to it, however, were two *583 Schedules C, one for Alaska Dental Health Services and one for Great Bear Ltd., and an application for extension of time. All of these attachments show the C Street address. On May 31, 1982, the Ogden Service Center completed the manual processing of the 1980 return and transmitted the data to Martinsburg for inclusion in the IRS national computer system. Although the return used both the C Street and the Parkway addresses, the processing personnel would look only at the first page and would show the Parkway address as petitioner's address. The Anchorage district office received the cartridge containing the microfilm showing petitioner's Parkway address on June 17, 1982, 13 days after the notices of deficiency were mailed. Petitioner's return for 1980, showing the Parkway address, was not transmitted by the Ogden Service Center to the Anchorage district office until September 8, 1982. Petitioner's return for 1981 was not sent to the Anchorage district office until August 18, 1982. The actual returns filed by petitioner for 1980 and 1981 were not, therefore, in the district office when the notices of deficiency here in issue were mailed. Because petitioner had refused to *584 produce requested records, on June 1, 1982, an administrative summons for the production of his 1978 and 1979 records was served on petitioner at the direction of the Seattle technical review staff. The summons, on its face, shows the C Street address. Before attempting service of the summons, the IRS agent consulted the Anchorage telephone book in order to call petitioner to ensure that he would be available to receive the summons. The agent found the telephone number and the Parkway address and served the administrative summons at that address by delivering it to a receptionist who identified herself as Mrs. Bagwell. She told the agent that it was "impossible" for him to see petitioner. He was not familiar with address locations in Anchorage, and did not change the C Street address as shown on the summons because he "didn't know that that address [the C Street address] wasn't correct as a residence." Petitioner did not timely pay the tax liability shown on his 1979 return; therefore, the collection office of the IRS opened a collection file in his case. The file shows the C Street address except that a Taxpayer Delinquent Account form contains a handwritten notation "ENMOD *585 4045 Lake Otis 99504"; this notation is an indication that at some point, some employee in the collection office determined, based on computer information, that petitioner had a Parkway address. The collection file indicates that on September 29, 1981, a clerk in the collection division tried twice to reach petitioner by telephone at number 243-7771 and learned that petitioner's number at work was 276-8687. The clerk indicated by notation on the Taxpayer Delinquent Account form that this number was that of Alaska Dental Health Services with the Parkway address and that there had been no response from a demand for payment letter or a "668 levy." On October 26, 1981, the clerk entered on the form a notation "not sure what is to be done." At that point, a collection officer took over the case and his review of the file indicated to him that the Parkway address was a possible place of employment and the "we didn't know exactly what address to go with." Had the "ENMOD" quotation, referred to above, been on the Taxpayer Delinquent Account form at the time he began his study of the case, he would "have gone * * * with the" Parkway address and ignored the C Street address.The collection *586 officer never discussed petitioner's case with anyone in the Examination Division which handled the attempted investigation leading to the issuance of the notices of deficiency. As of the July 1982 printing, the "Business Master File," which contains basic information on business organizations, showed the C Street address for "Alaska Dental Health Services," "George E. Bagwell, Executive Trustee." Similarly, as of the July 1982 printing, the individual master file of basic taxpayer identification information on George E. Bagwell, D.D.S., showed the C Street address. OPINION Section 6212(a) [2] provides that, if the Secretary determines a deficiency, he is authorized to send notice thereof by registered or certified mail. Under section 6212(b)(1), a notice "shall be sufficient" if "mailed to the taxpayer at his last known address." Respondent relies upon section 6212(b)(1) to support the sufficiency of the notices mailed to petitioner at the C Street address on June 4, 1982. Petitioner maintains that the notices are invalid because they were not mailed to the Parkway address which, he maintains, was then known to the IRS. *587 A taxpayer's "last known address" is that address to which, in light of all the surrounding facts and circumstances, respondent reasonably believed the taxpayer wished the notice to be sent. , affg. a Memorandum Opinion of this Court; ; . In other words, focusing upon respondent's knowledge, rather than upon what may have been the address actually is use by the taxpayer, it must appear that respondent exercised reasonable care and diligence in mailing the notice of deficiency. See , revg. on other grounds a Memorandum Opinion of this Court; ; , affd. per order . In the light of all the evidence, we hold that respondent did exercise reasonable care and diligence in the mailing of the notices of deficiency and that he *588 mailed them to petitioner's last known address. Petitioner argues that "Dr. Bagwell is no less entitled to the protection of the law even if he was a 'tax protester' in 1980, but respondent has introduced no evidence to show that he was." We fully agree that, whether or not petitioner can be classified as a tax protester, he is entitled to have a notice of deficiency mailed to him in accordance with the controlling statutes.In weighing whether the IRS acted reasonably in mailing the notices to the C Street address, however, we think it is relevant that petitioner refused to meet with the IRS agent, refused to submit his books and records for examination, and failed to inform the IRS agent of his move to the Parkway address. In taking this position, petitioner denied the agent authority conferred by statute [3] and, in substance, denied the IRS the information on his address that he now says the IRS should have used. Had petitioner cooperated in the audit, as contemplated by the statute, we are confident that the IRS agent would have learned of petitioner's move to the Parkway address, reflected that knowledge in the IRS files, and arranged to have the notices mailed there. At *589 least, initially, petitioner's predicament thus appears to be in large part the product of his own making. Nonetheless, we must examine the evidence to determine whether the IRS followed the statutes in mailing the notices of deficiency. The income tax returns for all 4 years here in issue show petitioner's C Street address. All of the correspondence between the IRS agent and petitioner in which the agent sought, but was denied, access to petitioner's relevant books and records show the same address. Petitioner did not at any time notify anyone in the IRS of any change in his address. The words of this Court in , *590 are apposite: In reasonably determining a taxpayer's last known address, the Commissioner is entitled to use those documents submitted to him by the taxpayer. See ; ; cf. . A taxpayer who desires to effect a change in his or her address bears the burden of providing the Commissioner with clear and concise notification of the new address. ; . Absent such notification, the Commissioner is entitled to rely on the taxpayer's most recent communication relevant to last known address * * *. "Administrative realities demand that the burden fall upon the taxpayer to keep the Commissioner informed as to his proper address." . In addition to the returns filed by petitioner showing C Street as his address, every taxpayer-address file in the Anchorage office on June 4, 1982, showed the C Street address. *591 Both the individual master file and the business master file carried that address. All of the correspondence between the IRS and petitioner with respect to the agent's efforts to examine petitioner's books and records, described in our findings, show the C Street address. Had the district director personally examined every document in his files before mailing the notices, we think that he would have used that address. Petitioner contends, however, that he notified the IRS of his change of address by filing his 1980 Federal income tax return showing the Parkway address. We recognize that there is some authority in the Court of Appeals for the Ninth Circuit, to which an appeal would be taken in this case, that the address on a return for a subsequent year, filed with the same IRS service center, may be taken into account in deciding whether the IRS had adequate notice of a new address. ; ; . [4] We do not think, in the circumstances presented in this case, however, *592 that the 1980 return provided adequate notice to the IRS that petitioner had, in fact, changed the address to which communications were to be sent to him. *593 We are here dealing with a taxpayer who lived in Anchorage, Alaska. The agent who worked the case had sent the file on petitioner's case to Seattle in February 1982, before petitioner's 1980 return was filed on April 19, 1982, and, in accordance with the established procedure, the Seattle office reviewed the case and prepared the notice of deficiency. At the time the notice of deficiency was signed by the Anchorage District Director on June 4, 1982, petitioner's 1980 return was still in Ogden, Utah.It was not sent to the Anchorage office until September 8, 1982, over 3 months after the notice of deficiency was issued. If, as we understand the law, a rule of reason is to be applied, we think that, in these circumstances, it would be unreasonable to charge either the Seattle technical staff or district counsel or the Anchorage District Director with knowledge on June 4, 1982, of the address shown on the face of petitioner's 1980 return. In fact, under the procedures used by the IRS for processing basic information from the millions of returns received by the Ogden Service Center, described in our findings, it seems highly unlikely that the Anchorage District Director could have *594 obtained information with respect to the contents of petitioner's 1980 return before June 4, 1982, had he actually attempted to do so. The information on that return was not fed into the Martinsburg computer until May 31, 1982. Approximately 2 weeks is required to receive the consolidated information back from the Martinsburg computer. The notices of deficiency were mailed during this 2-week turn-around period. The Anchorage office received the information on June 17, 1982, after the notices were mailed. From the available evidence, we think it quite inconceivable that the district director could have obtained the Parkway address from the 1980 return through a computer search initiated before June 4, 1982, the date on which the notices of deficiency were mailed. Assuming that the Anchorage District Director had access to the 1980 return and analyzed it, moreover, he would have been faced with a confusing situation. True, the face of the 1980 return used the Parkway address, but the two Schedules C and an application for extension of time, attached as part of the return, gave the C Street address. Indeed, petitioner's 1979 return, which on its face shows the C Street address, *595 was transmitted to the IRS on December 19, 1980, after he had moved his office to the Parkway address in August 1980, in an envelope bearing the Parkway address as the return address. This continued use of both the C Street and Parkway addresses would have made it entirely reasonable for the district director to decide, in the absence of any notice to the contrary, that the C Street address was the one to which petitioner wanted any notice of deficiency sent. We do not think petitioner deliberately sought to create confusion by using both addresses; he testified that the accountant who had prepared the papers showing the C Street address for him did not know he had moved, and he personally overlooked the mistakes when he signed the 1980 return. If his own accountant did not know of the change, however, it seems hardly reasonable to charge the Anchorage District Director with knowledge of his move. Petitioner argues that the IRS learned of his move to the Parkway address when the agent served the administrative summons on him at that address on June 1, 1982, 3 days before the notice was mailed. The agent, however, was not permitted to speak with petitioner when he visited the *596 Parkway address because he was told by a receptionist, who identified herself as petitioner's wife, that was "impossible." The business at the Parkway address was Alaska Dental Health Services and might well have been, as respondent suggests, a second dental office maintained by petitioner. The agent testified that he had no reason to think that the C Street address used in preparing the summons was not petitioner's residence where petitioner wished to have his mail delivered. [5] Again, had petitioner's employee not blocked the lines of cummunication, the agent might have learned the true facts. In the circumstances, the agent's service of the summons did not give the IRS "clear and concise notice" of a change of address. See .
*597 Petitioner also argues that the collection office, charged with collecting his unpaid 1979 tax liability obtained information of his move to the Parkway address and that the IRS office that issued the notice of deficiency is charged with knowledge of that information. The facts are set forth in our findings. They show that a clerk, trying to reach petitioner by telephone on September 29, 1981, learned that he could be reached at a telephone in the name of Alaska Dental Health Services with the Parkway address. Because she was unsuccessful in effecting collection, the clerk noted on the collection information sheet on October 26, 1981, that she did not know what to do next. The clerk's supervisor then examined the file and undertook to trace the address through the Post Office and finally, we infer, sometime after June 17, 1982, when the cartridge containing the 1980 tax return information was received in Anchorage, after the notice of deficiency had been issued, recorded the computer information in the collection office file to reflect petitioner's address at the Parkway location. Moreover, in , the Court *598 of Appeals for the Ninth Circuit said: Zolla argues that the IRS had notice of a change of address because, before the notices of deficiency were mailed, an agent in the collection division of the same district office discovered a more recent address (LaPeer Street) while attempting to collect an unrelated tax liability. The collection agent filed a notice of tax lien showing the LaPeer Street address. We adopt the view of the Tax Court that such information gained by a collector should not necessarily be imputed to the audit agents who mailed the notices of deficiency. . Because a notice of deficiency is invalid if not properly addressed, and because the statute of limitations will often bar the IRS from later issuing a correct notice if the first is invalid, the IRS must have clear guidance as to what information it must examine in determining a taxpayer's last known address. If we required agents mailing notices of deficiency to take into account address information acquired by agents in different divisions in the course of unrelated investigations, the IRS could ensure that notices were validly addressed only *599 by systematically recording in a central file all address information acquired in any fashion. We decline to require the IRS to do that. * * * [Fn. ref. omitted.] In summary, we find that the Anchorage District Director acted reasonably in mailing the two notices of deficiency to the C Street address. All of the information in his office at that time reflected the C Street address. As a practical matter, the information on which petitioner relies to show that he notified the IRS of a change in his address did not achieve that result.The 1980 income tax return on which he showed his Parkway address was not available to the district director at the time he issued the notices of deficiency and would not have been available to him prior to the date that the notices of deficiency were mailed on June 4, 1982. The information obtained by the revenue agent who served the administrative summons and the collection office falls far short of the kind of information which the IRS should be expected to have used in adjusting its records to cause the notices of deficiency to be sent to the Parkway address. We hold, therefore, that the notices of deficiency were mailed to petitioner's last *600 known address. Accordingly, respondent's motion to dismiss for lack of jurisdiction on the ground that the petition was not filed within 90 days of the date that the notices of deficiency were mailed will be granted. Petitioner's motion to dismiss on the ground that the notices of deficiency were not valid will be denied. We add that petitioner has filed a motion to strike an addendum to respondent's reply brief which refers to certain action stated to have been taken with respect to the administrative summons referred to above, after the cross-motions were heard. That motion will be granted except to the extent that the reply brief concedes that the amount of the determined deficiency for 1978 is excessive. The following table shows the amounts of the determined deficiencies and the amounts of the deficiencies and additions to tax as redetermined: Redetermined
Determined
Redetermined
Additions to Tax
Year
Deficiency
Deficiency
Sec. 6653(a)
Sec. 6651(a)
1976
$361
$361
$18
0
1977
1,833
1,833
92
0
1978
109,227
24,052
1,203
0
1979
90,833
99,317
5,705
$14,898
Respndent's reply brief states: The figures for *601 1976 and 1977 remain the same. The figures for 1978 decrease.If respondent's motion to dismiss is granted, the 1978 deficiency will be accordingly reduced. The 1979 figures were increased, but if respondent's motion is granted, the 1979 deficiency will be limited to the figures set forth in the subject statutory notice of deficiency. Because this Court never acquired jurisdiction of the case, petitioner will be entitled, if he wishes, to litigate the disputed liabilities under the refund suit procedures. An appropriate order will be entered.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.↩
2. Sec. 6212(a) and (b)(1) provides as follows: (a) In General.--If the Secretary determines that there is a deficiency in respect of any tax imposed by subtitle A or B or chapter 41, 42, 43, or 44, he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail. (b) Address for Notice of Deficiency.-- (1) Income and gift taxes and taxes imposed by chapter 42.--In the absence of notice to the Secretary under section 6903 of the existence of a fiduciary relationship, notice of a deficiency in respect of a tax imposed by subtitle A * * * if mailed to the taxpayer at his last known address, shall be sufficient for purposes of subtitle A * * * even if such taxpayer is deceased, or is under a legal disability, or, in the case of a corporation, has terminated its existence.↩
3. SEC. 7602. EXAMINATION OF BOOKS AND WITNESSES. For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized-- (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry; * * *↩
4. Those cases are readily distinguishable from the instant one. , involved a notice of deficiency for 1920 and 1921 mailed first on Dec. 17, 1926, to the address as shown on the returns for the years at issue. In the meantime, the taxpayer had moved, the IRS agents had examined records in the new office, and, it appears from the opinion, the 1920-1921 audit required the IRS agents to review later returns bearing the new address. In , the facts are not entirely clear but it appears that Cohen was convicted of attempting to evade the payment of taxes for 1945-1950. One defense was that the taxes were not properly assessed because the notice of deficiency was not mailed to his last known address. Cohen's returns for 1945-1947 apparently did not bear a Moreno address, which appeared on later returns. The court held that a mailing to the Moreno address was sufficient because the agents had learned of that address by verbal notification. In , involving the fiscal year 1974, the taxpayer moved his business address and failed to notify the IRS. Beginning in 1977, however, the taxpayer filed subsequent returns showing the new address, and the IRS began using preprinted labels on returns, including an income tax return, showing the new address. The court held that the audit division was charged with this service center knowledge.↩
5. In , affg. , the court said: The Internal Revenue Service is often presented with more than one address for a taxpayer, and where in the course of dealings between the Commissioner and the taxpayer, letters are successfully sent to different addresses, it is unreasonable to assume that one and not the other of the addresses is the "last known address" for the purpose of giving the deficiency notice. The fact that the administrative summons bore the C Street address should have alerted petitioner to the fact that the IRS records continued to show that as his address.↩